UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JEFFREY W. PASLEY ) | Case No. 16-33769 |
| ) | |
| Debtor(s) ) | |
| ) | |
| JEFFREY W. PASLEY ) | |
| ) | |
| Plaintiff ) | |
| vs. ) | AP No. 17-3075 |
| GARY FRANKLIN BIGGS ) | |
| ) | |
| and ) | |
| ) | |
| JUDITH A. ROSENBERG ) | |
| ) | |
| and ) | |
| ) | |
| MICHAEL R. GOSNELL ) | |
| ) | |
| and ) | |
| ) | |
| WEBER & ROSE PROFESSIONAL SERVICE ) | |
| CORPORATION ) | |
| ) | |
| Defendants ) | |

**MEMORANDUM**

This adversary proceeding came before the Court for an evidentiary hearing on December 4, 2018, on the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) (the "Motion") filed by the Defendants, Gary Franklin Biggs, Judith A. Rosenberg, Michael R. Gosnell, and Weber & Rose, Professional Service Corporation (hereinafter collectively referred to as the "Defendants"). The Plaintiff, Jeffrey W. Pasley, appeared *pro se*. The Defendants also appeared, and were represented by counsel. Upon consideration of the Motion, the response filed by the

Plaintiff, the evidence presented at the evidentiary hearing, and the post hearing briefs, the Court will grant the Motion in part.

**I.     FACTS**

Beginning in 2004, the Defendant Gary Biggs ("Biggs") and the Plaintiff were associates engaged in transactions involving real estate and investment contracting. Numerous loans were made by Biggs to the Plaintiff and to corporate entities controlled by the Plaintiff. The first loan, dated June 7, 2004, was entered into by Biggs and J P Properties, LLC, a Kentucky Limited Liability Company, by Jeffrey W. Pasley, Member and Jeffrey W. Pasley, individually. With this loan and mortgage, the Plaintiff signed a Residency Certification stating that the real property collateral for the loan was not his primary residence.

The second transaction, dated December 27, 2004, involved Biggs and 4J's Coin Laundry, LLC, a Kentucky Limited Liability Company, by Jeffrey W. Pasley, Member and Jeffrey W. Pasley, individually. The Plaintiff also signed a Residency Certification with respect to this loan and mortgage, indicating the collateral was not his primary residence.

The same parties from the second transaction entered into a third transaction, dated March 4, 2005. The collateral for this loan consisted on equipment for the operation of a laundry (washers, dryers, change machine, laundry carts, water heater, and other items).

The fourth transaction, dated April 28, 2005, was entered between Biggs and J P Properties, LLC, a Kentucky Limited Liability Company, by Jeffrey W. Pasley, Member and Jeffrey W. Pasley, individually. As with the other real estate transactions, the Plaintiff signed a Residency Certification indicating the collateral was not his primary residence.

The fifth and sixth transactions, dated July 14, 2006 and August 22, 2007 respectively, were

of a similar nature as the forth transaction, with the same parties and a Residency Certification.

The relationship soured and on February 18, 2015, Defendant Biggs filed suit against the Plaintiff in state court. Defendant Biggs was granted Summary Judgment on November 27, 2016. Defendant Gosnell, represented Defendant Biggs in the state court litigation. Defendant Gosnell filed a Notice of Judgment Lien ("Judgment Lien") on real estate on December 15,2016. That Judgment Lien listed Defendant Rosenberg rather than Defendant Biggs as the judgment creditor.

Due to the threat of foreclosure, Plaintiff filed for Chapter 7 Bankruptcy protection, on December 19, 2016. That bankruptcy case is still ongoing.

On December 13, 2017, Plaintiff filed the adversary proceeding currently before the Court. The Plaintiff included seven separate counts in his complaint, consisting of the following claims: 1)Violation of the Fair Debt Collection Practices Act ("FDCPA"); 2) Lack of Standing; 3) Slander of Title; 4) Quiet Title; 5) Fraud/ Misrepresentation; 6) Respondeat Superior Liability; and 7) Intentional Infliction of Emotional Distress. All these claims derive from the same factual event, the erroneous Judgment Lien listing Defendant Rosenberg as judgment creditor.

On the same date of the filing of the complaint, December 13, 2017, the Clerk of Court issued a Summons and Scheduling Order. On January 8, 2018, the Plaintiff filed a Certificate of Service indicating that the Defendants were served with the Summons and Scheduling Order on December 26, 2017. The date of service, December 26, 2017, was thirteen (13) days after the issuance of the Summons and Scheduling Order, and six (6) days after the time allowed for service in Fed. R. Bankr. P. 7004(e).[1]

---

[1] Fed. R. Bankr. P. 7004(e) provides as follows: " Service made under Rule 4(e), (g), (h)(1), (i), or (j)(2) F.R.Civ.P. shall be by delivery of the summons and complaint within 7 days after the summons is issued. If service is by any authorized form of mail, the summons and

On January 20, 2018, the Defendants filed a Motion to Quash Summons, arguing that the Plaintiff did not timely serve the summons and complaint as required by Fed. R. Bankr. P. 7004(e). On January 30, 2018, the Court entered an order granting the Motion to Quash, and further ordered that the Clerk of Court issue a new summons for service by the Plaintiff. A new summons was issued on January 30, 2018, and served upon the Defendants on January 31, 2018.

Defendants did not answer, but instead filed the Motion currently before the Court. In the Motion, the Defendants sought dismissal pursuant to Fed.R. Civ. P. 12(b)(1) and (6).[2] In their Motion, the Defendants asserted three separate grounds for dismissal. First, the Defendants argued that the Court lacked subject matter jurisdiction because these claims belonged to the Chapter 7 Trustee rather than to the Plaintiff. Second, the Defendants argued that the Plaintiff's claims failed to state any claim against the Defendants. Specifically, the Defendants argue that "all the claims involved in the within proceeding filed by [Plaintiff] have a one year statute of limitations." Finally, the Defendants also argue the claim based upon the FDCPA is not available to the Plaintiff because the debts involved were not consumer related.

## III. LEGAL ANALYSIS

### A. Jurisdiction

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (O).

### B. Standard For A Motion to Dismiss Under FRCP 12(b)(1)

---

complaint shall be deposited in the mail within 7 days after the summons is issued. If a summons is not timely delivered or mailed, another summons will be issued for service."

[2] Rule 12(b)(1) of the Federal Rules of Civil Procedure are made applicable to bankruptcy adversary proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

A motion to dismiss under Fed. R. Bankr. P. 12(b)(1) challenges the court's subject matter jurisdiction. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exits." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir.2004), *citing, RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133–35 (6th Cir.1996).

As noted above, a motion to dismiss pursuant to Fed. R. Bankr. P. 12(b)(1) for lack of subject matter jurisdiction may refer to the evidence without converting the motion into one for summary judgment. *League of Women Voters v. Brunner*, 548 F.3d 463, 475, fn. 15 (6th Cir.2008) (internal citation omitted). In addition, on a Fed. R. Bankr. P. 12(b)(1) motion, the court is empowered to resolve factual disputes. *Ernst v. Rising*, 427 F.3d 351, 372 (6th Cir.2005), *citing Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986) ("[W]here subject matter jurisdiction is challenged under Rule 12(b)(1), as it was here, the plaintiff has the burden of proving jurisdiction in order to survive the motion. Perhaps even more importantly, when a Rule 12(b)(6) motion is converted to a Rule 56 motion for summary judgment, the court, upon finding genuine issues as to material facts, must deny the motion; whereas on a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes.").

**C. Standing**

The first ground for dismissal cited by the Defendants was that the Plaintiff lacked standing to bring these claims. At the evidentiary hearing, the Defendants acknowledged that this was no longer a viable argument in light of the fact that the Chapter 7 Trustee had abandoned all of these

claims.[3] With the abandonment, the claims reverted back to the Plaintiff, thereby conferring standing back to the Plaintiff to bring these claims.

**D. Statute of Limitations**

The Court will next turn to the statute of limitations defense. As mentioned above, the Defendants argue that the state law claims asserted by the Plaintiff should be dismissed because this action was not timely commenced. Specifically, because the summons and complaint were not served within the limitations period, the Defendants argue the claims must be dismissed.[4] The Defendants cite KRS 413.140(1)(a) and (d) and 15 U.S.C. § 1692k(d) in support of their argument. Here, because the Judgment Lien was recorded on December 15, 2016, pursuant to KRS 413.140(1)(a) and (d) as well as 15 U.S.C. § 1692k(d), this action should have been filed no later than December 15, 2017.[5]

Defendants admit that Plaintiff did file this action on December 13, 2017, within the statute of limitations. However, the initial attempt to serve was initiated on December 26, 2017, eleven days after the statute of limitations ran. Moreover, due to the Plaintiff's failure to timely serve the summons and complaint, the original summons was quashed by Court order. While a new summons was issued on January 30, 2018, these summons were not served until January 31, 2018, forty-seven

---

[3] The Chapter 7 Trustee filed a Notice of Action by Trustee to Abandon Property of the Debtor's Estate, wherein the Trustee sought approval to abandon the claims asserted by the Plaintiff against the Defendants. The Court approved that abandonment by order dated May 15, 2018.

[4] At the evidentiary hearing, the Defendants acknowledged that this argument did not apply to the slander of title claim, which has a longer limitations period.

[5] The parties spend some time and effort arguing over whether the discovery rule should apply to extend the statute of limitations. However, because the Court's determination is based upon the shorter period of time, the Court need not address whether the discovery rule applied to extend the limitations period.

days after the running of the statute of limitations. Defendants cited *Gibson v. EPI Corp.*, 940 S.W.2d 912 (Ky. App. 1997) and *Whittinghill v. Smith*, 562 S.W.2d 649, 650-651 (Ky. App. 1977) in support of their argument.

In the case of *Gibson v. EPI Corp.*, a plaintiff brought a premises liability action against a building owner and provider of security services. 940 S.W.2d 912, 912 (Ky. App. 1997). On the date that the suit was filed, the clerk's office issued a summons. The plaintiff's counsel then accepted the summons and retained it himself. *Id.* at 912–13. Notably, settlement negotiations were ongoing when Plaintiffs' counsel retained the summons. Two and one-half months after the limitations period had expired, when no settlement had been reached, the summons was served. *Id.* at 913. The Kentucky Court of Appeals found that the "intention to go forward with the service of process was not reached until the limitation period had expired and thus the action was not commenced within the limitation period." *Id.*

Judge McKinley dealt with a similar issue in the case of *CPC Livestock, LLC v. Fifth Third Bank, Inc.*, 495 B.R. 332 (W.D. Ky. 2013). In that case, no summons was issued until twenty-eight days after the two-year limitations period. As such, the defendant sought dismissal under the same argument presented by the Defendants in this action. The plaintiff in that action answered this argument by stating he waited to have the summons issued until an amended complaint could be filed, thereby saving time and resources.

Judge McKinley denied the defendant's request for dismissal holding as follows:

> CR 3.01 states that a "civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith." CR 3.01. "The rule seems to be that if, when the summons was issued, the plaintiff had a bona fide, unequivocal intention of having it served presently or in due course or without abandonment, the summons was issued in good faith."

7

> *Roehrig v. Merchs. & Businessmen's Mut. Ins. Co.*, 391 S.W.2d 369, 371 (Ky.1965). Good faith "can be, and usually is, something less than perfection or complete accuracy," and above all, "it means not to take advantage of, not to deceive, not to be underhanded." *Id.* at 370. In this case, Plaintiffs' counsel accepted the issued summonses and retained them. According to counsel, this was done because Plaintiffs contemplated that an amended complaint would be filed and counsel wanted to avoid spending time and resources serving two complaints in a short period of time. The Court finds that these facts fail to show that the summonses were not issued in good faith.

*CPC Livestock, LLC v. Fifth Third Bank, Inc.*, 495 B.R. 332, 344 (W.D. Ky.,2013).

Judge McKinley easily distinguished his case from the *Gibson* case. He found the plaintiffs in his case possessed the requisite intent to serve the summonses in due course. The court could not find that the plaintiffs ever intended to abandon service. *CPC Livestock* at 344. Unlike the plaintiff in *Gibson*, who held the summons so as to not disrupt settlement negotiations, the plaintiffs in the *CPC Livestock* case were not trying to take advantage of the defendants but were instead trying to save costs. Under those facts, the court could not find a lack of good faith.

In their post trial briefing, the Defendants assert that Judge McKinley's decision was "simply wrong." Moreover, the Defendants assert that a Kentucky court would have decided the case differently. This Court does not agree with the Defendants' assertions. A Kentucky court has also dealt with this specific issue.

A similar result was reached in the case of *Ramirez v. Com. ex rel. Brooks*, 44 S.W.3d 800 (Ky. App. 2000). There the Kentucky Court of Appeals found that even though the summons was not served within the limitations period, the plaintiff's claims still would not be dismissed. The court could not find that the plaintiff, or her counsel, deliberately stalled the commencement of the action. "CR 3 measures commencement from the date of the filing of the complaint and the issuance of a summons in good faith." *Id.* at 804 (citing *Jones v. Baptist Healthcare System, Inc.*, Ky. App.,

964 S.W.2d 805, 807 (1997). The Court of Appeals upheld the circuit court's determination that the plaintiff had acted in good faith. *See also Justice v. Nasser, Inc.*, 2008 WL 5111133, at 1 (E.D. Ky. 2008) (no bad faith when service of summons not made prior to expiration of limitations period).

In this case, the Court cannot find that the Plaintiff acted in bad faith. The initial summons was served just six days after the seven day window to serve expired. Moreover, the window ran during the holiday season and expired on December 23, 2017. At the evidentiary hearing, the Plaintiff explained that during this period he was also taking final examinations in law school and that he was also dealing with a family medical matter.

The Defendants argue that the service was not properly accomplished until January 30, 2017. While this is true, the initial summons was served just 13 days after its issuance, and had the Defendants not sought to quash the summons for being three days stale, commencement of the action would have been effectuated much closer to the December 13, 2017 filing date and within the statute of limitations.

At the evidentiary hearing, the Defendants tried to argue that the Plaintiff acted in bad faith by delaying service of the summons. The Defendants alleged that the delay was intended to put them at a disadvantage. The Court finds this argument unpersuasive. The only possible gain that could be accomplished by serving a stale summons would be to reduce the amount of time the Defendants would have to answer the complaint. However, if this *de minimis* reduced amount of time was at all problematic for the Defendants, a simple motion to extend time to answer would have alleviated any prejudice. Like the plaintiffs in the *CPC Livestock* case, the *Ramirez* case, and the *Justice* case, the facts in this case fail to show a lack of good faith.

The Defendants try to distinguish these cases by stating that the original summons in this

9

case was quashed. The Defendants, however, neither show how this point changes the analysis nor cite any authority to support this argument. This Court cannot equate a quashed summons due to staleness with a bad faith failure to serve. As stated above, CR 3.01 requires that the plaintiff have a bona fide, unequivocal intention of having a summons served presently or in due course or without abandonment. Here, this Court has no trouble finding that the Plaintiff had a bona fide, unequivocal intention of having the summons served in due course. There is absolutely nothing in the record to show an intent to abandon the case by the Plaintiff.

The Defendants also make the argument that these cases did not involve bankruptcy adversary proceedings, where the service of process requirements are stricter and more particular. As above, the Defendants cite to no authority to support this argument. This Court need not opine about whether the Rules of Procedure in bankruptcy court are stricter or more particular. The Court will note however, that Judge McKinley in the *CPC Livestock* case and Judge Coffman in the *Justice* case are both Federal judges applying this same rule. This Court can see no reason why a federal bankruptcy court should treat the issue differently than two federal district courts. As such, the Court concludes the Motion based upon a statute of limitations defense must be denied.

### E.  FDCPA

The Court now turns to the final argument raised in the Motion. With this argument, the Defendants seek to dismiss the FDCPA claim because the debts in question here were not consumer-related debts.

In 1977, Congress enacted the FDCPA, 15 U.S.C. § 1692, et seq., to combat debt collectors' abusive, deceptive, and unfair debt collection practices and to ensure that debt collectors who adhere to ethical, non-abusive debt collection practices are not placed in a competitive disadvantage. The

FDCPA prohibits a debt collector from employing any false, deceptive, or misleading means in order to collect a "debt." 15 U.S.C. § 1692e. The statute defines a "debt" as

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).

In "order to prevail on a[ ] FDCPA claim, a plaintiff must prove that (1) he was the object of collection activity arising from consumer debt, (2) the defendant is a debt collector within the meaning of the statute, and (3) the defendant engaged in a prohibited act or omission under the FDCPA." *Poulin v. The Thomas Agency*, 760 F.Supp.2d 151, 158 (D. Me. 2011)(citing *Krasnor v. Spaulding Law Office*, 675 F.Supp.2d 208, 211 (D. Mass. 2009)).

In the case before this Court, the Plaintiff cannot meet the first prong of the test because he cannot prove that he was the object of collection activity arising from a consumer debt. The FDCPA is inapplicable to the collection of commercial debts. S.Rep. No. 382, 95th Cong., 1st Sess. at 3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697. *See Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980).

Determining whether an obligation is a consumer or business debt for FDCPA purposes requires an examination of the nature of the transaction from which the debt arose. *See Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (holding that the borrower's intended use of the loan proceeds is the determinative issue); *see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 874–75 (7th Cir. 2000)(holding that a loan is a consumer debt under the FDCPA, even if the loan proceeds are ultimately used for commercial purposes, if

the borrower intended to use the proceeds for personal use at the time of the transaction).

Here, the evidence presented at the evidentiary hearing overwhelmingly supports the conclusion that the debts in question here were commercial debts rather than consumer debts. The intended use for these loan proceeds were for business purposes rather than personal use. The real estate transactions all included a Residency Certification that the collateral involved was not the Plaintiff's primary residence. The equipment transaction listed equipment necessary to operate a commercial laundromat. This equipment included multiple washers, dryers, and a change machine. It is clear to the Court that the Plaintiff entered into these loans for a commercial purpose.

The Plaintiff's only response to this argument was that the Defendants had sued him personally in state court, and consequently the debts were somehow turned into consumer debts rather than commercial debts. This argument is not well taken. As stated above, a debt is personal or commercial based upon the intent of the borrower at the time the debt was incurred. Here, the evidence clearly indicates the Plaintiff incurred these debts with the intent to engage in commercial activity. As such, these debts are not consumer debts, and the Plaintiff cannot meet the first prong of the FDCPA test. The Defendants choice to pursue only the Plaintiff individually, rather than his corporate identities, in state court has no bearing on this determination. The Defendants' Motion to Dismiss as to the FDCPA claim will be granted.

**IV.    CONCLUSION**

In summary, the Court finds that the Motion based upon the standing argument was abandoned by the Defendants prior to and at the evidentiary hearing held on December 4, 2018. The Court further finds the Plaintiff attempted to serve the summons in good faith, and that the claims are not barred by the statute of limitations. Finally, the Court finds that the debts in question here

were not consumer debts, and such the count of the Plaintiff's complaint alleging a violation of the FDCPA will be dismissed. The Court will enter an order consistent with this Memorandum.

*Alan C. Stout*
Alan C. Stout
United States Bankruptcy Judge

Dated: January 24, 2019

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| In re: )<br>JEFFREY W. PASLEY )<br>)<br>Debtor(s) )<br>)<br>JEFFREY W. PASLEY )<br>)<br>Plaintiff )<br>vs. )<br>GARY FRANKLIN BIGGS )<br>)<br>and )<br>)<br>JUDITH A. ROSENBERG )<br>)<br>and )<br>)<br>MICHAEL R. GOSNELL )<br>)<br>and )<br>)<br>WEBER & ROSE PROFESSIONAL SERVICE )<br>CORPORATION )<br>)<br>Defendants ) | Case No. 16-33769<br><br><br><br><br><br><br><br>AP No. 17-3075 |

**ORDER**

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that the Motion to Dismiss filed by Defendants is partially granted. Count 1 of the complaint alleging a violation of the FDCPA is dismissed. The remaining counts will proceed.

**IT IS FURTHER ORDERED** that the Defendants file their answer within 30 days of the

entry of this order.

**IT IS FURTHER ORDERED** a new pre-trial conference will be scheduled by separate notice to discuss further proceedings in this matter.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: January 24, 2019