UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JEFFREY W. PASLEY | ) | Case No. 16-33769 |
| | ) | |
| Debtor(s) | ) | |

| | | |
|---|---|---|
| JEFFREY W. PASLEY | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | AP No. 17-3075 |
| GARY FRANKLIN BIGGS | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JUDITH A. ROSENBERG | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MICHAEL R. GOSNELL | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WEBER & ROSE PROFESSIONAL SERVICE CORPORATION | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OPINION**

This adversary proceeding comes before the Court on the Motion for Summary Judgment filed by the Plaintiff, Jeffrey W. Pasley ("Pasley") and the Motion for Summary Judgment filed by the Defendants, Gary Franklin Biggs, Judith A. Rosenberg, Michael R. Gosnell, and Weber & Rose, Professional Service Corporation (hereinafter collectively referred to as the "Defendants"). Each party supported their motion with exhibits and filed a response to the opposing party's motion. The Court heard oral argument on the motions on November 3, 2020. As discussed more fully below,

based upon the undisputed facts, the exhibits, and the applicable law, the Court has determined that the Defendants' Motion for Summary Judgment should be granted and that Pasley's Motion for Summary Judgment should be denied.

## I.    FACTS

The following facts are undisputed.  Beginning in 2004, the Defendant Gary Biggs ("Biggs") and Pasley were associates engaged in transactions involving real estate and investment contracting. Numerous loans were made and by Biggs to Pasley and to corporate entities controlled by the Pasley.

The relationship soured and on February 18, 2015, Biggs filed suit against the Plaintiff in state court, specifically Jefferson Circuit Court.  Defendant Mike Gosnell ("Gosnell"), of the Defendant law firm of Weber & Rose, represented Biggs in this action.  Biggs was granted summary judgment on November 21, 2016.  After filing an unsuccessful motion seeking to alter, amend or vacate the summary judgment against him, Pasley filed a Notice of Appeal to the Kentucky Court of Appeals.[1]

As stated above, Gosnell represented Biggs in the state court litigation.  On December 15, 2016, Gosnell filed a Notice of Judgment Lien on Real Estate (the "Judgment Lien") with the Jefferson County Clerk.  That Judgment Lien erroneously listed Defendant Judith Ann Rosenberg ("Rosenberg") as the judgment creditor rather than Biggs.  Defendants contend this mistake was a scrivener's error, while Pasley contends the action was intentional.

On December 16, 2016, Pasley emailed his counsel about the Judgment Lien.  In that email,

---

[1]  Prior to filing that Notice of Appeal, Pasley filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code.  As a result, prosecution of the appeal was stayed for some time, and, to this Court's knowledge, that matter remains pending in Kentucky state appellate court.

Pasley acknowledged that Rosenberg was listed as the judgment creditor. Thus, Pasley knew immediately of the error by December 16, 2016.

On the date that Gosnell filed the Judgment Lien, December 15, 2016, Pasley's residence -- located at 4211 W. Broadway, Louisville, Kentucky ("the 4211 Property") -- was not owned by Pasley, but was instead owned by his wholly owned corporation REN Enterprises, LLC ("REN Enterprises"), and, thus, was not subject to that Judgment Lien. Pasley directed that REN Enterprises transfer the 4211 Property to his own name on December 19, 2016.

On December 19, 2016, due to the threat of foreclosure, after receiving the Notice of Judgment Lien, and very shortly after he had REN Enterprises transfer the 4211 Property into his own name, Pasley filed for Chapter 7 bankruptcy protection. Robert Keats was appointed Chapter 7 Trustee ("Chapter 7 Trustee") on December 20, 2016. That bankruptcy case is still ongoing.

In his sworn bankruptcy schedules, Pasley listed two pieces of real property. He listed property located at 3150 Vermont Avenue, Louisville, Kentucky and the 4211 Property on his Schedule A. According to his bankruptcy petition, Pasley resided at the 4211 Property.

On December 16, 2017, Pasley moved to avoid the judgment lien of Rosenberg. Biggs objected, contending that he held the judgment lien, not Rosenberg. Additionally, Biggs conceded that Rosenberg was not claiming a lien against any property owned by Pasley. In light of the Response, Pasley, on April 16, 2018, amended his motion to seek only a declaration that Rosenberg held no legal claim or judgment against Pasley, and had no assignment or transfer to her of any lien or judgment against Pasley. Biggs filed a reply indicating he did not object to the entry of the order tendered by Pasley with his amended motion. Consequently, on May 8, 2018, the Court entered Pasley's tendered order finding that Rosenberg was not a creditor of Pasley and that she did not have

a valid legal claim against Pasley.

On June 29, 2018, the Chapter 7 Trustee moved to sell the 4211 Property and real property located at 4528 West Broadway.[2]  Said sales were to be free and clear pursuant to the provisions of 11 U.S.C. § 363.  A little over 10 days later, the Trustee moved to sell the 3150 Vermont Avenue property.  Pasley opposed the motions.

On November 15, 2018, the Court entered an order authorizing the Trustee to sell the 3150 Vermont Avenue property free and clear of liens pursuant to § 363.  On November 27, 2018, the Court entered an order authorizing the Trustee to sell the real property located at 4528 West Broadway free and clear pursuant to § 363.[3]  The Trustee's motion as to the 4211 Property was continued.  After the continued hearing on the motion, on February 12, 2019, the Court entered an order authorizing the Trustee to sell the 4211 Property free and clear pursuant to § 363, subject to Pasley's homestead exemption.[4]

On December 13, 2017, almost a year after the bankruptcy case was filed, Pasley filed the adversary proceeding currently before the Court.[5]  The complaint contained seven separate counts,

---

[2]  The 4528 West Broadway property was property that was owned by the Debtor's solely owned corporation R.E.N. Enterprises.

[3]  Pasley appealed this order, but his appeal was later dismissed for lack of standing.  *See In re Pasley*, 603 B.R. 6 (B.A.P. 6th Cir. 2019).

[4]  On December 3, 2019, the Court entered an order directing the Trustee to pay Pasley his homestead exemption of $23,675.00 from the proceeds of the sale of the 4211 West Broadway property.  To the Court's knowledge, the Trustee complied with this order.

[5]  This adversary proceeding asserted claims that technically belonged to the bankruptcy estate.  The Trustee did not authorize the Plaintiff to initiate this action on his behalf.  This apparent standing problem was rectified when the Trustee abandoned the bankruptcy estate's interest in these claims by the Notice of Intent to Abandon filed April 30, 2018, and the order approving the abandonment entered May 15, 2018.  By virtue of that abandonment, the ownership of the claims reverted back to Pasley.

4

including: I)Violation of the Fair Debt Collection Practices Act ("FDCPA"); II) Lack of Standing;

III) Slander of Title; IV) Quiet Title; V) Fraud/ Misrepresentation; VI) Respondeat Superior

Liability; and VII) Intentional Infliction of Emotional Distress ("IIED").  All these claims derive

from the same factual event, the filing of the Judgment Lien erroneously listing Rosenberg as the

judgment creditor.  In his prayer, Pasley requested $1.9 million dollars in compensatory damages,

as well as another $1 million dollars in punitive damages.

Defendants did not immediately answer, but instead filed a Motion to Dismiss.  After

conducting an evidentiary hearing on the dismissal motion, on January 24, 2019, the Court entered

a Memorandum Opinion and Order granting in part the Motion to Dismiss.  Specifically, the Court

determined that the debts at issue were not "consumer debts" but, instead, were commercial debts

to which the FDCPA did not apply.  As such, that count was dismissed.  The Court denied the

Motion to Dismiss as to the other counts.

After the resolution of the Motion to Dismiss, the adversary proceeding continued.  The

Defendants filed their answer on February 25, 2019, and the parties began conducting discovery.

On September 1, 2020, both Pasley and the Defendants filed their motions for summary

judgment, with attached exhibits.  On September 14, 2020, Pasley filed his response to the

Defendants' summary judgment motion, while the Defendants filed their response to Pasley's

summary judgment motion on September 15, 2020.  As stated above, the Court heard oral argument

on the motions on November 3, 2020, and took the matter under submission on November 4, 2020.

The matter is now ripe for determination.

**II.    STANDARD**

To grant a motion for summary judgment, a Court must find that there is no genuine dispute

as to any material fact and that the moving party is therefore entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056. The movant bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies that burden, the non-moving party must thereafter produce specific facts demonstrating a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Although the Court must review the evidence in the light most favorable to Plaintiff, as the non-moving party, he must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the plaintiff is required to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Bankr. P. 7056(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. *Anderson*, 477 U.S. at 252.

### III.    LEGAL ANALYSIS

#### A. Lien Validity

As admitted by the parties at the hearing, the primary issue in this case is the validity of the Judgment Lien. Pasley admitted at the hearing, and the Defendants agreed, that should the Court find the Judgment Lien valid, Pasley's remaining counts are moot. As discussed more fully below, upon review of the Judgment Lien, the relevant Kentucky statutes, and the applicable case law, the

Court concludes that the Judgment Lien is valid notwithstanding the erroneous listing of the identity of judgment creditor.

The facts are undisputed as to the contents of the Judgment Lien. Thus, the validity of the Judgment Lien is a pure question of law for this Court to decide. Pasley seeks to have the Court declare the Judgment Lien null and void – in its entirety – due to the oversight in having Rosenberg's name listed as the judgment creditor on the Judgment Lien. Pasley contends that the Judgment Lien was invalid because, in his opinion, it failed to strictly comply with the mandates of KRS 426.720. Unfortunately for Pasley, the relevant Kentucky statutes do not support such a conclusion. Indeed, KRS 426.720 and corresponding case law is clear that this type of error does not in any way affect the validity of that Judgment Lien.

A judgment lien is a statutory creature; its provisions and requirements for perfection are set forth in KRS 426.720, which provides:

> A final judgment for the recovery of money or costs in the courts of record in this Commonwealth, whether state or federal, shall act as a lien upon all real estate in which the judgment debtor has any ownership interest, in any county in which the following first shall be done:
>
> (1) The judgment creditor or his counsel shall file with the county clerk of any county a notice of judgment lien containing the court of record entering the judgment, the civil action number of the suit in which the judgment was entered, and the amount of the judgment, including principal, interest rate, court costs, and any attorney fees;
>
> (2) The county clerk shall enter the notice in the lis pendens records in that office, and shall so note the entry upon the original of the notice;
>
> (3) The judgment creditor or his counsel shall send to the last known address of the judgment debtor, by regular first class mail, postage prepaid, or shall deliver to the debtor personally, a copy of the notice of judgment lien, which notice shall include the text of KRS 427.060

7

and also the following notice, or language substantially similar:

"Notice to Judgment Debtor. You may be entitled to an exemption under KRS 427.060, reprinted below. If you believe you are entitled to assert an exemption, seek legal advice."; and

(4) The judgment creditor or his counsel shall certify on the notice of judgment lien that a copy thereof has been mailed to the judgment debtor in compliance with subsection (3) of this section.

KRS 426.720

Pasley correctly notes that in Kentucky, it is generally understood that "the statutory provisions for perfecting a lien must be strictly followed." *Laferty v. Wickes Lumber Co.*, 708 S.W.2d 107 (Ky. 1986) (*citing Hub City Wholesale Electric, Inc. v. Mik-Beth Electrical Co., Ltd.*, 621 S.W.2d 242 (Ky. App. 1981)).

Kentucky Revised Statutes 426.720 does not require the identification of the judgment creditor anywhere within the body of the lien or the notice thereof.  In fact, the notice of judgment lien must contain the following: 1) the court of record entering the judgment; 2) the civil action number of the suit in which the judgment was entered; and 3) the amount of the judgment, including principal, interest rate, court costs, and any attorney fees.  Here, there is no question that the Judgment Lien contains all three of these elements.  It lists the court of record entering the judgment (Jefferson Circuit Court); the civil action number (No.15CI-00787); and the amount of the judgment, including principal, interest rate, court costs, and any attorney fees on each of the multiple counts in which Judgment was entered against Pasley.  *See* Judgment Lien, Defendants' Exh. 9 (affirmatively identifying principal sums, plus interest, due on Counts I through VII).

Moreover, a copy of the Judgment Lien was sent to the last known address of the judgment debtor (Pasley), by regular first class mail, postage prepaid, as certified by Gosnell on the Judgment

Lien.  The Judgment Lien was also mailed to Pasley's counsel, John W.  Bauman, by regular first class mail, postage prepaid.  Finally, the Judgment Lien also includes the text of KRS 427.060 as required.

Simply speaking, this Judgment Lien completely satisfies the requirements of KRS 426.720 in every way.  That statute elucidates the information which must be contained in the body of a notice of judgment lien, and that specific information was included.

This case is akin to the facts of the *Newman v. Estate of Hobbic*, 539 S.W.3d 697, 699 (Ky. App. 2018) case from the Kentucky Court of Appeals.  In that case, a judgment debtor sought to invalidate a judgment lien filed against his property based upon the judgment creditor's alleged failure to strictly comply with the mandates of KRS 426.720.  In particular, the debtor claimed that the lien was insufficient as it stated an incorrect interest rate, failed to identify that costs were included in the judgment amount, did not correctly recite the language of KRS 427.060, and otherwise included information not called for either by KRS 427.060 or KRS 426.720.  The circuit court granted the creditor's motion for summary judgment and entered an order of sale. The circuit court determined that the creditor's judgment lien notice complied with KRS 426.720 and was valid, concluding that the alleged deficiencies in the judgment lien notice were merely "a matter of form, not content" and that the creditor strictly complied with KRS 426.720.

On appeal, the Kentucky Court of Appeals agreed and affirmed the decision of Jefferson Circuit Court.  Even though the lien at issue in that case had included additional information not required by KRS 426.720, the Court of Appeals concluded that, because it had otherwise complied with the strict mandates of that statute, the inclusion of that additional information did not invalidate the lien.  With respect to the alleged deficiencies, the court concluded that they were "trivial," and

did not affect perfection of the judgment lien nor notice of same.  *Newman v. Estate of Hobbic*, 539 S.W.3d 697, 700 (Ky. App. 2018).

As in the *Newman* case, this Court finds the deficiency cited by Pasley to be trivial, not rising to the level necessary to affect the perfection of the Judgment Lien nor notice of the same.  The Defendants strictly complied with the perfection mandates of KRS 426.720.  Thus, this Court has no problem concluding that the Judgment Lien is valid and enforceable.

This conclusion is further supported when viewed through a statutory construction context. "It is a general rule of statutory construction that the enumeration of particular items or categories excludes others not specifically mentioned." *Schwindel v. Meade County*, 113 S.W.3d 159, 168 (Ky. 2003) *citing Commonwealth v.  Harris*, 59 S.W.3d 896, 900.  With regard to judgment liens, the Kentucky Legislature specifically and concisely identified what information should be included in a notice of judgment lien.  Section 426.720 reflects a legislative determination as to the information that is material to the validity of a judgment lien and which must, therefore be included.  The Kentucky Legislature decided to not require the identity of the judgment creditor to be included on a notice of judgment lien.  It made a clear policy choice that this specific information is not material to the validity of the lien.

Consequently, as in the *Newman* case, a mistake in regard to non-material information which may be included simply does not invalidate a lien which otherwise strictly complies with the statutory requirements.  This Court may not, and will not, re-write the statute or construe the statute to add the additional requirement of including the judgment creditor identity in order to find a notice of judgment lien valid and enforceable.  That requirement -- identifying the judgment creditor -- is not in the statute, and this Court will not apply the statute as such.  To hold otherwise, would be the

height of judicial activism, requiring this Court to impose its view over that of the Kentucky Legislature. This the Court will not do.

To conclude, the Court finds that, even under the strict compliance requirement, the Judgment Lien meets the statutory requirements of KRS 426.720, notwithstanding the misidentification of the identity of the judgment creditor. The Defendants' error in identifying Rosenberg as the judgment creditor was a non-material, trivial deficiency.[6] Consequently, the Judgment Lien strictly complied with KRS 426.720 and is a valid, enforceable Judgment Lien.

**B. Additional Complaint Analysis**

The Court could stop here, after concluding the validity of the Judgment Lien, and grant the Defendants' Motion for Summary Judgment. As stated earlier, the parties agreed that such a conclusion mooted the remainder of Pasley's claims. The Court will instead address Pasley's remaining counts assuming, *arguendo,* that the Judgment Lien was not valid or enforceable.

**1. Count I (FDCPA)**

Pasley filed this adversary proceeding alleging seven separate counts, including: 1) Violation of the FDCPA; 2) Lack of Standing; 3) Slander of Title; 4) Quiet Title; 5) Fraud/ Misrepresentation; 6) Respondeat Superior Liability; and 7) IIED. The Court previously dismissed Count I on the Defendants' Motion to Dismiss.

**2. Count II (Lack of Standing)**

---

[6]  Additionally, the Court agrees with the Defendants' assertion that the mistake was nothing more than a scrivener's error. "Black's Law Dictionary defines 'scrivener's error' as a synonym for 'clerical error.' A 'clerical error' is one 'resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination.'" *See also Blume v. Small Business Administration*, 2017 WL 9690402, at *1 (W.D. Ky. 2017). As supported by the affidavits of Gosnell and his legal assistant, Ms. Thomasson, this was a simple clerical error that was not caught prior to the filing.

11

With respect to Count II (Lack of Standing), Pasley alleged that Rosenberg had no standing to file the Judgment Lien against his real property.  At the hearing on the motions for summary judgment, Pasley admitted that this count was simply declaratory in nature, and that he was not seeking monetary damages under this count.  As for the declaratory request, the Court finds that the Defendants have admitted, repeatedly, that Rosenberg is not a creditor of Pasley and that she was not the judgment creditor, and that she had no standing to file the judgment lien on her own behalf.  Not only have the Defendants conceded this point, an order to this effect was entered in the main bankruptcy case on May 8, 2018.  In that order, the Court specifically found that Rosenberg was not a creditor of Pasley and that she did not have a valid legal claim against Pasley.  Thus, any request of this nature in this adversary proceeding is simply moot.  Pasley already has a court declaration that Rosenberg lacked standing to file the Judgment Lien on her own behalf.  Consequently, the Court could grant the Defendants' summary judgment on this count as well.

### 3. Count III and IV (Slander of Title and Quiet Title)

Counts III and IV both deal with the real property.  Count III alleges Slander of Title on his personal residence (the 4211 Property), asserting that the Defendants "disparaged Plaintiff's exclusive valid title by and through the preparing, posting, publishing, and recording of the [Judgment Lien] ... ."  Likewise, Count IV seeks Quiet Title, with Pasley asserting that the Defendants claim an interest in the 4211 Property adverse to his title, and that these claims constitute a cloud on his title to the property. There are several problems with these Counts.

In order to maintain a slander of title action in Kentucky, the "plaintiff must plead and prove that the defendant knowingly and maliciously communicated, orally or in writing, a false statement which has the effect of disparaging the plaintiff's title to property; he must also plead and prove that

he has incurred special damage as a result." *Bonnie Braes Farms, Inc. v. Robinson*, 598 S.W.2d 765, 765–67 (Ky. App. 1980) *citing Ideal Savings Loan & Building Ass'n v. Blumberg*, 295 Ky. 858, 175 S.W.2d 1015 (1943); *Hardin Oil Co. v. Spencer*, 205 Ky. 842, 266 S.W. 654 (1924). If special damage has not been incurred, the action is not maintainable. *Id.* The special damage required may consist of either a loss by the plaintiff of a sale of his property or a diminution in its fair market value. *Id.* at 767.

Clearly, Pasley cannot meet the elements for this type of action. He has offered no evidence that the Defendants' actions were made knowingly, much less maliciously. Gosnell and his legal assistant, Ms. Thomasson both submitted affidavits to the effect that the listing of Rosenberg was a mistake, which was not caught prior to filing. Pasley has offered no proof as to the Defendants' intent.

Secondly, the Defendants' action must disparage "plaintiff's title to property." Here, at the time this Judgment Lien was filed, the 4211 Property was owned solely by REN Enterprises. It was not until after the Judgment Lien was filed did Pasley acquire title of this property from REN Enterprises. For that reason alone, the "slander of title" would fail. It was flatly impossible – both factually and legally – for the Defendants to have intended to disparage Pasley's title to the 4211 Property when he, in fact, had no title to that property at the time the Judgment Lien was recorded.

Additionally, the last element for this action is that a plaintiff must prove he has incurred special damage. Here, Pasley has not plead or otherwise offered any proof to show any special damage due to the Defendants' actions. He has not, and cannot, show that there was any diminution in value due to the Defendants' action. In fact, the Chapter 7 Trustee sold these properties at fair market value, with no diminution in value due to the Judgment Lien and its error.

13

Moreover, Pasley fully admits to having had knowledge both of the Judgment Lien and the error contained therein before freely and willingly transferring title to the 4211 Property from REN Enterprises to himself.

The law in Kentucky is unequivocally clear that "taking possession, or … accepting a conveyance … after notice of the defect in title … is a waiver of the defect… ." *Eaton v. Trautwein*, 288 Ky. 97, 103, 155 S.W.2d 474, 477 (1941). *See also Smith v. Smith*, 304 Ky. 562, 201 S.W.2d 720 (1947) (one who takes title to property with knowledge of defects in the title takes it subject to those defects). Here, Pasley was aware of the Judgment Lien and its erroneous listing of Rosenberg as judgment creditor, when he directed REN Enterprises to transfer the property to his name. Pasley cannot now claim slander of title of the 4211 Property, when he caused the property to be transferred to himself with full knowledge of the error.

Likewise, an action to quiet title is governed by KRS 411.120. That statute provides as follows: "Any person having both the legal title and possession of land may prosecute suit, by petition in equity, in the circuit court of the county where the land or some part of it lies, against any other person setting up a claim to it." KRS 411.120. "It is fundamental that in an action to quiet title the plaintiff must allege and prove both title and possession." *Noland v. Wise*, 259 S.W.2d 46, 48 (Ky.1953).

Putting aside the issue that this action was not filed in the circuit court of the county where the land is located, Pasley did not have legal title to the land in question (4211 Property) at the time that the Defendants filed the Judgment Lien, nor does he have legal title or possession of the property now. REN Enterprises held title to this property on the date that the Defendants filed the Judgment Lien. By order entered on February 12, 2019 in the main bankruptcy case, the Chapter

14

7 Trustee sold this property free and clear of all liens in the main bankruptcy case.  In short, Pasley cannot meet the elements of this cause of action.

Finally, with respect to both these two counts (Slander of Title and Quiet Title), these claims are clearly moot in light of the Trustee's sale of Pasley's real property via 11 U.S.C. § 363 free and clear of all liens.  Pasley no longer owns the 4211 Property, or any other real property that was listed on his bankruptcy schedules.  As such, there is no disparagement on his property and there is no property to quiet title.  These properties were sold free and clear of all liens, including the Judgment Liens, to third parties, who received the properties with clean titles.  The Chapter 7 Trustee sold these properties at fair market value, and with no diminution in the value.  In other words, it would be impossible for the Court to quiet title or cure slander of title to property Pasley no longer owns or has any interest in.  The Court could grant summary judgment in favor of the Defendants on these counts as well.

### 4.  Count V (Fraud and Misrepresentation)

The court now turns to Count V, Pasley's allegation of fraud or misrepresentation.  Pasley alleges that the Defendants intentionally misrepresented to Plaintiff that they were entitled to file the Judgment Lien on his real property.[7]  He goes on to state that the "Defendants misrepresented that they are the creditor of judgment entered November 21, 2016."  Pasley claims this misrepresentation was of a material fact, and, as of a result, he was damaged.

The Court finds this count fails as a matter of law.  Under Kentucky law, to prove a claim for fraudulent misrepresentation, a plaintiff must establish by clear and convincing evidence "1) a material misrepresentation; 2) which is false; 3) known to be false or made recklessly; 4) made with

---

[7]  In fact, the Judgment Lien was filed against Pasley, not against any specific property.

15

inducement to be acted upon; and 5) acted in reliance thereon and causing injury." *Denzik v. Denzik*, 197 S.W.3d 108, 110 (Ky. 2006); *McDonald v. DNA Diagnostics Center, Inc.*, 2020 WL 6391553, at *2 (W.D. Ky. 2020).

The facts here simply do not support a claim of fraudulent misrepresentation. First, this was not a material misrepresentation. Indeed, as discussed above, the identity of the judgment creditor is irrelevant under the KRS 426.720. It is not required to even be included on the judgment lien notice. As stated earlier, the mistake was trivial at most.

Second, Pasley has offered absolutely no evidence that the error was known to be false or recklessly made. Conversely, the Defendants have offered proof via the affidavits of Gosnell and his legal assistant, Ms. Thomasson, that this was a simple clerical error that was not caught prior to the filing.

Likewise, Pasley has offered no proof that this mistake was made with inducement to be acted upon. Indeed, how could the Defendants have made the statement with inducement for Pasley to act upon when Pasley did not own the property when the judgment lien was filed? Clearly, this mistake was not made to induce Pasley to act.

The Court can also find as a matter of law that Pasley did not rely on the mistake. Pasley claims that he relied on the mistake, causing him to file for bankruptcy. This is simply not the case. At most, Pasley relied upon the judgment owed to Biggs or the filing of a notice of judgment lien, not the erroneous listing of Rosenberg as judgment creditor on that judgment lien, to file for bankruptcy. Moreover, the filing of a notice of judgment lien goes to perfection and priority, not the existence of a debt. Clearly, it was the judgment owed to Biggs that was the motivating factor for the bankruptcy, not the listing of Rosenberg as judgment creditor on the Judgment Lien.

16

Finally, Pasley cannot show that listing Rosenberg as judgment creditor led to any specific injury.  To the extent that filing bankruptcy was the injury, that injury was not caused by the Defendants listing Rosenberg as the judgment creditor, but rather to Pasley's financial situation and the debt owed to Biggs and other creditors.

Failing to meet any one of these elements would be fatal to Count V, but the Court concludes that Pasley fails to meet nearly all of the elements.  As such, the Court could grant summary judgment to the Defendants on this count as well.

### 5.  Count VI (Respondeat Superior)

Turning to Count VI (Respondeat Superior), at the hearing Pasley acknowledged that this was not a separate tortious allegation, but merely a way to hold Gosnell's employer liable for Gosnell's allegedly tortious conduct.  He further acknowledged that should the Court find no tortious conduct, this allegation would be moot.  The Court agrees.  There is no stand-alone claim for "respondeat superior." Rather, under the theory of respondeat superior, an employer may only be vicariously liable for the negligent acts of its employees that occur within the course and scope of their employment. *Hilliard v. Akal Security, Inc.*, 2014 WL 12599825, at *2 (N.D. Ohio 2014). Moreover, the Defendants have admitted that, to the extent that any claims center on the acts and/or omissions of Gosnell, he was acting within the course and scope of his employment with Weber and Rose, thereby mooting that Count.

### 6. Count VII (Intention Infliction of Emotion Distress)

Which brings the Court to Pasley's final claim, Count VII Intentional Infliction of Emotional Distress ("IIED").  As before, the Court concludes that this count has several problems.

In Kentucky, the tort of outrageous conduct, or IIED, was first recognized in *Craft v. Rice*,

671 S.W.2d 247 (Ky.1984); *see also Childers v. Geile*, 367 S.W.3d 576, 578 (Ky. 2012).  The
Kentucky Supreme Court adopted Section 46(1) of the Restatement (Second) of Torts: "One who
by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to
another is subject to liability for such emotional distress, and if bodily harm to the other results from
it, for such bodily harm." *Id.* at 251.

        To prevail on a claim of IIED, a plaintiff must show that the defendant's conduct was
outrageous and intolerable because "it offends against generally accepted standards of decency and
morality; a causal connection between the conduct and emotional distress; and emotional distress
which is severe."  *Id.*  In this tort, the conduct at issue must intentionally or recklessly be done to
cause emotional distress.  *Id.*

        In opinions interpreting the scope of IIED, Kentucky courts have observed that "not every
upset plaintiff can recover for emotional distress" and that "not every bad act gives rise to a cause
of action for the intentional infliction of emotional distress[.]" *First and Farmers Bank of Somerset,
Inc. v. Henderson*, 763 S.W.2d 137 (Ky. App.1988).  It is "the conduct of the offender rather than
the subject of the conduct [that] determines whether the conduct was outrageous." *Burgess v.
Taylor*, 44 S.W.3d 806, 809 (Ky. App. 2001).  Moreover, it is for the court to determine, in the first
instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous
as to permit recovery.  *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004)
(*overruled on other grounds by Toler v. Süd–Chemie, Inc.*, 458 S.W.3d 276, 287 (Ky. 2014).

        First of all, this Court finds that, as a matter of law, the Defendants' conduct here was not
outrageous and intolerable.  It clearly did not rise to the level that it offends general standards of
decency and morality.  Kentucky courts have set a high threshold for IIED/outrage claims, i.e., that

18

the conduct at issue must be "a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984).  The Defendants conduct here, while unfortunate, is not even close to the level of conduct necessary to support an IIED claim.  Erroneously listing the identity of a judgment creditor on a notice of judgment lien clearly is not "utterly intolerable in a civilized community."  Major outrage is essential to this tort and this conduct, at most, raised confusion.

Second, as the name states in IIED, a defendant's conduct be intentional.  As stated above, Pasley has offered no proof that this mistake was intentional.  Pasley could not identify any evidence that the Defendants' actions were intentional.  The Defendants, conversely, have offered proof that the mistake was inadvertent.  As stated in the affidavits of Gosnell and Ms. Thomasson, this was a clerical error that simply was not caught prior to filing.  There is nothing in the record at all that would support a finding that this conduct was intentional.

At the hearing on the summary judgment motions, Pasley argued that the fact Rosenberg was listed on Weber and Rose's billing records for Biggs legal services proves that this was intentional. He further hypothesized that this mistake was done in order for Biggs to repay a debt owed to Rosenberg.  The Court finds this argument nonsensical and unsupported.  Biggs held the judgment against Pasley.  While he certainly could have assigned that debt, or sold that debt to Rosenberg, listing her as the judgment creditor did not somehow transfer the debt owed by Pasley from Biggs to Rosenberg.  The Court cannot identify, nor has Pasley identified, any reasonable motivation for the Defendants to erroneously list Rosenberg as the judgment creditor.  As such, the Court concludes that this action was not intentional as required to support a claim for IIED.  The Court could grant the Defendants summary judgment on this Count as well.

## IV.    CONCLUSION

To conclude, the Court will grant the Defendants' Motion for Summary Judgment and deny Pasley's Motion for Summary Judgment.  The Court finds the Judgment Lien to be valid, and enforceable, notwithstanding the erroneous listing of Rosenberg as the judgment creditor. Moreover, even assuming, *arguendo*, that the lien was invalid, the Court would still grant the Defendants' Motion for Summary Judgment for the reasons stated above.  Count I has previously been dismissed.  Count II is moot due to the order entered in the main bankruptcy case.  Counts III and IV, in addition to being waived and defective, are moot due to the sales of the properties by the Chapter 7 Trustee free and clear of all liens.  Count V fails because the misrepresentation was not material, it was not intentional or recklessly made, and because Pasley did not rely on the misrepresentation to his detriment.  Count VI fails in that it is not a stand alone cause of action, and there is no tortious conduct for it to attach.  Finally, Count VII fails because the Defendants actions were not intentional, and the actions do not rise to the level of outrage to support a claim of IIED. A separate order will be entered in accordance with this memorandum opinion.

Alan C. Stout
United States Bankruptcy Judge
Dated: November 30, 2020

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JEFFREY W. PASLEY | ) | Case No. 16-33769 |
| | ) | |
| Debtor(s) | ) | |

| | | |
|---|---|---|
| JEFFREY W. PASLEY | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | AP No. 17-3075 |
| GARY FRANKLIN BIGGS | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JUDITH A. ROSENBERG | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MICHAEL R. GOSNELL | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WEBER & ROSE PROFESSIONAL SERVICE CORPORATION | ) | |
| | ) | |
| Defendants | ) | |

**ORDER**

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference,

IT IS ORDERED that the Plaintiff's Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that the Defendants Motion for Summary Judgment is GRANTED and that the Complaint, and all claims therein, are hereby dismissed in their entirety,

with prejudice.

Each party is to bear its own costs and expenses.

There being no reason for delay, this is a final and appealable Order.

_Alan C. Stout_
Alan C. Stout
United States Bankruptcy Judge

Dated: November 30, 2020